IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 22-cv-00472-RM

CALLUM JOSEPH LIVINGSTONE,

    Petitioner,

v.

EMERALD MACKENZIE LIVINGSTONE,

    Respondent.

_____

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER**
_____

    Petitioner filed his Verified Complaint and Petition against Respondent pursuant to the Hague Convention on the Civil Aspects of International Child Abduction and its implementing legislation, the International Child Abduction Remedies Act ("ICARA"), seeking return of their young children ("IJL" and "ALL") to Australia. In accordance with an expedited briefing schedule, the parties submitted pre-hearing briefs, presented testimony and tendered exhibits at an evidentiary hearing, and then submitted post-hearing briefs. Having considered the relevant evidence, arguments, circumstances, and law, the Court denies the Petition for the reasons below.

**I.  LEGAL STANDARDS**

    "To obtain relief under the Hague Convention, a petitioner has the burden of proving, by a preponderance of the evidence, that the children have been wrongfully removed or retained." *Kanth v. Kanth*, 79 F. Supp. 2d 1317, 1321 (D. Utah 1999); *see* 22 U.S.C. § 9003(e)(1). The Court's role is not to determine the merits of child custody claims but rather to prevent parents from abducting children to avoid the jurisdiction of courts they view as unfavorable. *West*

*v. Dobrev*, 735 F.3d 921, 929 (10th Cir. 2013).  To make a prima facie showing of wrongful removal in this case, Petitioner must establish that (1) the children were habitually resident in Australia at the time of their removal or retention; (2) their removal or retention was in breach of his custody rights under Australian law; and (3) he was exercising those rights at the time of removal or retention.  *See Takeshi Ogawa v. Kyong Kang*, 946 F.3d 1176, 1179 (10th Cir. 2020).

If Petitioner establishes that the children's removal or retention was wrongful, their return is required unless Respondent establishes "one of the affirmative defenses or *narrow* exceptions set forth in the Convention."  *West*, 735 F.3d at 931 (quotation omitted); *see also Miller v. Miller*, 240 F.3d 392, 398 (4th Cir. 2001).  As pertinent here, Respondent argues that (1) Petitioner consented to or subsequently acquiesced in the removal or retention, *see* Hague Convention, art. 13(a); (2) there is a grave risk that the children's return would expose them to physical or psychological harm or otherwise place them in an intolerable situation, *see* Hague Convention, art. 13(b); (3) the children are now settled in their new environment, *see* Hague Convention, art. 12; and (4) the children's return would not be permitted by fundamental principles relating to the protection of human rights and fundamental freedoms, *see* Hague Convention, art. 20.  The first and third of these must be proven by a preponderance of the evidence; the second and fourth must be proven by clear and convincing evidence.  22 U.S.C. § 9003(e)(2); *see Mertens v. Kleinsorge-Mertens*, 135 F. Supp. 3d 1092, 1102 (D.N.M. 2015).

## II.     FINDINGS OF FACT

Based on the evidence presented, the Court makes the following findings of fact.  To the extent that any conclusions of law may also be considered findings of fact, they are incorporated into this part of the Order by reference.

1. In February 2015, Petitioner, an Australian citizen, and Respondent, a United States citizen, married in Las Vegas, Nevada. They lived in the United States until February 2017, when they traveled to Australia with ILJ, their three-month-old son.

2. In Australia, they lived a nomadic lifestyle, taking numerous trips, moving frequently between rental properties, staying occasionally with family and friends, and camping in a trailer and tent.

3. ALL was born in Australia in March 2019, while the family was staying at Petitioner's mother's house.

4. In April 2021, while staying at an Airbnb, Petitioner and Respondent had an argument which resulted in Petitioner being escorted to the police station. By the time he returned to the Airbnb, Respondent had left with the children.

5. That same month, Respondent obtained a temporary protection order against Petitioner based on allegations of domestic violence.

6. The protection order provides that Petitioner

> must not approach to within 100 metres of where [Respondent or the children] live[], work[] or frequent[]—except for the purposes of having contact with children but only as set out in writing between the parties or in compliance with an order under the Family Law Act or when contact with a child is authorised by a representative of the Department of Communities (Child Safety).

Resp't Ex. A at 7. The order also provides that Petitioner "must not contact or attempt to contact or arrange for someone else (other than a lawyer) to contact" Respondent or the children, with exceptions for appearing before a court or tribunal; attending an agreed conference, counseling, or mediation; or having contact with a child as authorized above. *Id.* The order further provides that Petitioner "must not follow or remain or approach to within 100 metres" of Respondent or the children, subject to the same exceptions. *Id.*

7.     If Petitioner contravenes any conditions of the order, he faces a possible penalty of up to three years imprisonment for the first offense. *Id.* at 11.

8.     The order was subsequently made permanent for a period of five years, with the additional condition that Petitioner "must not locate, attempt to locate or arrange for someone else to locate" Respondent or the children. *Id.* at 1.

9.     Petitioner was physically present in court when the temporary order was made and present via telephone when it was made permanent. *Id.* at 1, 7. Petitioner did not resist the imposition of either order, and he has made no showing or argument as to any avenues he might have to appeal the order or have it rescinded or amended.

10.    In May 2021, Respondent and the children came to the United States, and they have lived in Colorado ever since. Respondent has not communicated with Petitioner or facilitated or allowed any communication between him and the children.

11.    Petitioner testified he did not learn that Respondent and the children had left Australia until June 2021, when he received a Notice of Family Assistance Cancellation stating that the children could no longer receive benefits because they had been out of the country for more than six weeks.

12.    He brings this action seeking return of the children, asserting they have been wrongfully removed and retained under the Hague Convention and in breach of his custody rights under Australian law.

### III.    DISCUSSION

#### A.    **Prima Facie Case**

Notwithstanding the family's nomadic lifestyle, the Court has little trouble concluding the children were habitually resident in Australia at the time of their removal. IJL lived there for

more than four years from the time he was three-months old; ALL was born and lived her entire life there before the removal. In addition, Petitioner is a citizen of Australia and Respondent received permanent residency there. However, the Court concludes Petitioner has failed to establish the other two elements of a prima facie case by a preponderance of the evidence.

First, Petitioner has failed to show what custody rights, if any, he retains under the Australian Family Law Act while the protection order is in effect—a prerequisite to establishing that the children's removal was in breach of such rights. In fact, no evidence or testimony was offered at the hearing as to this matter. Given the breadth of the protection order, the Court declines to assume that such remaining rights are substantial enough that Respondent's removal of the children breached his rights.

Petitioner's citation to *Ischiu v. Garcia*, 274 F. Supp. 3d 339, 348 (D. Md. 2017), for the proposition that a restraining order does not terminate a parent's custodial rights, is unavailing. There, the petitioner presented undisputed testimony through an attorney and expert witness on Guatemalan law that in that country, parental authority is exercised over minor children jointly for as long as the marital union survives, and that "separation for this purpose requires a formal, judicial determination of separation, which did not happen." *Id.* at 346. Petitioner has not made or even attempted to make an analogous showing with respect to the legal status of his custody rights. The fact that the protection order prohibits him from locating or attempting to locate Respondent and the children indicates that whatever custody rights he presumptively had as a parent were significantly diminished under the protection order. The Court declines to assume otherwise in the absence of contrary evidence or authority. Thus, for present purposes, the Court finds Petitioner has not met his burden to show that the children's removal breached whatever custody rights he continues to have under Australia law.

Petitioner's reliance on *Nicolson v. Pappalardo*, 605 F.3d 100, 109 (1st Cir. 2010), is also misplaced. The *Nicolson* court concluded that the respondent wrongfully retained her daughter in the United States despite having obtained a "protection from abuse" order in Maine (and that the court deemed less than clear because it contained handwritten language and abbreviations) *after* leaving Australia. *Id.* at 107-08. That is unlike the situation here, where an Australian protection order was in place before Respondent left that jurisdiction. Petitioner cites no other authority for the proposition that he retained significant custody rights following the protection order, and, under the circumstances, the Court will not simply assume that Respondent's conduct violated whatever custody rights he continues to have.

Second, Petitioner failed to show he was exercising his custody rights *at the time of removal*. The Court acknowledges that a petitioner's burden of proof on this element is minimal in the ordinary case. *See Friedrich v. Friedrich*, 78 F.3d 1060, 1066 (6th Cir. 1996) ("[I]f a person has valid custody rights to a child under the law of the country of the child's habitual residence, that person cannot fail to 'exercise' those custody rights under the Hague Convention short of acts that constitute clear and unequivocal abandonment of the child."). And the Court finds there is no evidence that Petitioner ever clearly and unequivocally declared any intention to abandon the children. However, in addition to failing specify what custody rights he still retains, Petitioner has also failed to explain how he could exercise such rights while maintaining one hundred meters of separation between him and where the children live, work, or frequent, and without contacting them or arranging for others to contact them (other than through a lawyer) for a five-year period. Given this looming impossibility, the Court finds Petitioner's contention that he would continue to be exercising his custody rights but for Respondent's wrongful removal and retention of the children is a fiction. In fact, because of the protection order, he was no

6

longer exercising his custody rights at the time of removal.

The absence of any attempt by Petitioner to address the practical implications of the protection order further persuades the Court that Petitioner has not met his burden of proving by a preponderance that he was exercising his custody rights at the time of removal.  He has made no attempt to even claim that he opposed or resisted the protection order.[1]  Nor has he made any attempt to address how he might, even theoretically, exercise custody rights in a manner consistent with the order.  For example, while a writing between the parties appears to be off the table at this point, Petitioner never mentioned how he might obtain an order under the Family Law Act or have contact with the children by obtaining authorization from a representative of the Department of Communities, as prescribed in the protection order.  Nor did he present testimony from any attorney or expert in Australia law to explain any avenues he might have to continue exercising his custody rights under Australia law.  *Cf. Ischiu*, 274 F. Supp. 3d at 348.

From the Court's perspective, the protection orders are crucial documents in this case, and the Court is at a loss to understand why Petitioner barely addressed their significance during the hearing or in any brief or pleading he filed.  The Court cannot ignore the protection orders and assume that whatever presumptive custody rights Petitioner had prior to when they were issued were absolutely preserved thereafter.  Nor can the Court ignore the utter absence of any evidence that Petitioner resisted the protection orders when he apparently had the opportunity to do so.  Therefore, the Court finds Petitioner has not met his burden of proving by a preponderance of the evidence that the children have been wrongfully removed or retained.

---

[1] Although the Court rejects any suggestion by Respondent that this conduct constitutes abandonment of custodial rights, it is relevant.  Petitioner was not exercising his custody rights *because* he failed to prevent or limit the protection order.  The parties have shed little light on those proceedings, but in any event, the Court discerns no evidence of any act by Petitioner signifying his consent to the children's removal.

### B. Affirmative Defenses

In the interest of expediting these proceedings, and because it is possible the United States Court of Appeals for the Tenth Circuit could see things differently with respect to Petitioner's prima facie case, the Court turns now to the affirmative defenses asserted by Respondent.[2]

#### 1. Article 13(a): Consent or Acquiescence

Respondent's consent defense appears to be based on the premise that Petitioner's conduct necessitated Respondent and the children's relocation. But Respondent cites no authority for this reconceptualization of "consent" as it is used in other contexts, and the Court is not persuaded to adopt it here. The Court finds there is no evidence that Petitioner ever agreed that the children could be removed from Australia or that he engaged in acts constituting clear and unequivocal abandonment of them.[3] Accordingly, Respondent has not met her burden of proving by a preponderance of the evidence that this exception applies.[4]

#### 2. Article 13(b): Grave Risk

Respondent contends that the children will be placed in an intolerable situation if they are returned because, unless she travels and moves to Australia, there is no one with whom the children could live, and they will become wards of the state. Respondent also points out the

---

[2] In her pre-trial brief, Respondent suggested that "age and degree of maturity" exception might also apply. (ECF No. 21, ¶¶ 61-63.) She makes no further mention of the exception in her post-trial brief, and the Court concludes she has abandoned it. Alternatively, the Court finds, based on the children's ages, that any such argument lacks merit.

[3] As noted above, the Court specifically finds that Petitioner's conduct during the protection order proceedings does not support an inference that he consented to or acquiesced in the children's removal from Australia.

[4] The Court notes that this provision of the Hague Convention also includes a defense based on the Petitioner "not actually exercising the custody rights at the time of removal or retention." Hague Convention, art. 13(a). Of course, if the Court's ruling on Petitioner's prima facie case stands, there is no need to address this exception. On the other hand, if the Petitioner established his prima facie case, he necessarily was exercising his custody rights, precluding a finding that he was not actually exercising them under this exception.

legal quandary she could be placed in due to the birth of her third child. As noted in *West*, 735 F.3d at 931 n.8, Circuit courts that have addressed the issue have stated that children may be exposed to a "grave risk" when they are forced to return to a zone of war, famine, or disease, or when the country of habitual residence is unable or unwilling to adequately protect them from serious abuse or neglect. These circumstances are not present here, and the Court does not agree that the concerns and impracticalities articulated by Respondent are contemplated by this provision. Though such concerns are undoubtedly significant, Respondent cites no authority for such a broad reading of this provision, and, in the interest of comity with the other Hague Convention signatories, the Court is not inclined to adopt it under the present circumstances. In short, Respondent has not met her burden of establishing by clear and convincing evidence that the children would be exposed to a "grave risk" if forced to return to Australia.

        3.      <u>Article 12: Now Settled</u>

By its clear terms, this defense applies when a period of one year has elapsed from the date of the wrongful removal or retention and the date of the commencement of the proceedings. Though a significant portion of the evidence presented or proffered by Respondent is apparently addressed to establishing that the children are now thriving in Colorado, that issue is irrelevant at present. The Court reiterates its previous rulings that this defense is not available to Respondent here, and she has not met her burden with respect to this exception.

        4.      <u>Article 20: Human Rights</u>

Finally, Respondent reasserts her allegations regarding the domestic abuse she endured throughout her relationship with Petitioner and contends the psychological and physical health of the children would be endangered were they required to return to Australia. But Respondent waived this argument in her pre-trial brief, stating that she would not be relying upon this

provision of the Hague Convention.  (ECF No. 21 at ¶ 69.)  Moreover, this argument significantly overlaps with Respondent's argument on the "grave risk" exception, and the Court rejects it for the same reasons.  Further, the Court notes that, with the protection order in place, there appears little to no likelihood the children would be placed in Petitioner's care before July 2026, if ever.  And in any event, there is no evidence that Petitioner acted violently toward the children.  Under the circumstances, Respondent has not shown by clear and convincing evidence that this exception applies.

## IV.     CONCLUSIONS OF LAW

Based on the findings and fact and discussion above, the Court makes the following conclusions of law.  To the extent that any findings of fact may also be considered conclusions of law, they are incorporated into this part of the Order by reference.

1. At the time of their removal, the children were habitually resident in Australia.

2. Due to the conditions imposed by the protection order, Respondent's removal of the children has not been shown to be in breach of Petitioner's custody rights.  Petitioner's custody rights are either suspended or he is otherwise precluded from fully exercising them while the order remains in effect.

3. Although Petitioner was exercising his custody rights under Australian law prior to when the protection order was made, he has not established that he was doing so at the time the children were removed.  Petitioner failed to offer any explanation as to how he could exercise any such rights while the protection order remains in effect.

4. None of Hague Convention's affirmative defenses applies in the context of this case.

V.   ORDER

Therefore, the Court DENIES the Petition (ECF No. 1), and the Clerk is directed to CLOSE this case.

DATED this 26th day of August, 2022.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge