FILED
United States Court of Appeals
Tenth Circuit

December 8, 2023

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

CALLUM JOSEPH LIVINGSTONE,

    Petitioner - Appellant/Cross - Appellee,

v.

EMERALD MACKENZIE LIVINGSTONE,

    Respondent - Appellee/Cross - Appellant.

Nos. 22-1308 & 22-1343
(D.C. No. 1:22-CV-00472-RM)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **BACHARACH**, **BALDOCK**, and **MURPHY**, Circuit Judges.
_____

## I.    Introduction

On April 22, 2021, Callum Livingstone, an Australian citizen, and Emerald Livingstone, a United States citizen, had an argument while residing in Cairns, Australia. The dispute led to the couple's separation and resulted in two protective orders against Mr. Livingstone. Shortly thereafter, Ms. Livingstone left Australia for the United States with the pair's two young children. Mr. Livingstone brought this action pursuant to the Hague Convention on the Civil Aspects of International Child

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Abduction (the "Hague Convention") to compel the return of the children for formal custody proceedings in Australia. The district court determined Mr. Livingstone failed to establish, given the protective orders, a prima facie case of unlawful child abduction. Although this court concludes the district court erred, in part, in its reliance on the protective orders, we agree Mr. Livingstone failed to show he possessed custody rights under Australian law as required to prevail under the Hague Convention. Thus, exercising jurisdiction pursuant to 28 U.S.C. § 1291, we **affirm** the district court's judgment.

## II.   Background

### a.   The Hague Convention

The Hague Convention seeks to prevent parents from abducting their children to avoid unfavorable custody decisions in the children's country of habitual residence. *Shealy v. Shealy*, 295 F.3d 1117, 1121 (10th Cir. 2002). "Generally, [the Hague Convention] creates an international legal mechanism requiring contracting states to promptly return children who have been wrongfully removed to, or wrongfully retained in, their jurisdiction, without deciding anew the issue of custody." *Navani v. Shahani*, 496 F.3d 1121, 1124 (10th Cir. 2007). The International Child Abduction Remedies Act ("ICARA") provides federal district courts with original jurisdiction over petitions seeking the return of children pursuant to the Hague Convention. 22 U.S.C. § 9003(a). On appeal, this court reviews district court findings of fact for clear error and conclusions regarding domestic, foreign, and international law de novo. *Shealy*, 295 F.3d at 1121.

A prima facie case of wrongful removal under the Hague Convention requires that a petitioner establish "(1) the child was habitually resident in a given state at the time of the removal or retention; (2) the removal or retention was in breach of petitioner's custody rights under the laws of that state; and (3) petitioner was exercising those rights at the time of removal or retention." *Ogawa v. Kang*, 946 F.3d 1176, 1179 (10th Cir. 2020) (quotation omitted); *see also* Hague Convention art. 3. Here, it is undisputed the children were habitual residents of Australia at the time of removal.[1] This case, therefore, only implicates the second and third prongs of the prima facie case. A removal is not wrongful "merely because a parent objects," but rather if the petitioner demonstrates by a preponderance of the evidence that the removal violates a petitioner's rights of custody according to the law of the country of habitual residence. *Id*. As to the exercise of those rights, prong three, Circuits have generally concluded "[t]he standard for finding that a parent was exercising [his or her] custody rights is a liberal one, and courts will . . . find exercise whenever a parent with *de jure* custody rights keeps, or seeks to keep, any sort of regular contact with his or her child." *Walker v. Walker*, 701 F.3d 1110, 1121 (7th Cir. 2012) (quotation omitted); *see also Bader v. Kramer*, 484 F.3d 666, 671 (4th Cir. 2007); *Baxter v. Baxter*, 423 F.3d 363, 370 (3d Cir. 2005); *Sealed Appellant v. Sealed*

---

[1] The Livingstones' firstborn, I.J.L., was a resident of Australia for over four years prior to his removal in 2021. Their second child, A.L.L., was born in Australia in 2019 and never lived elsewhere prior to her removal. *See generally Watts v. Watts*, 935 F.3d 1138, 1142–43 (10th Cir. 2019) (habitual residence under the Hague Convention is determined by analyzing the child's "acclimatization" to the country and the parents' "last shared intent").

*Appellee*, 394 F.3d 338, 344–45 (5th Cir. 2004); *Friedrich v. Friedrich*, 78 F.3d 1060, 1066 (6th Cir. 1996).

Even if a removal is deemed unlawful, children are not required to return to the country of habitual residence if "one of the affirmative defenses or narrow exceptions set forth in the Convention" applies. *West v. Dobrev*, 735 F.3d 921, 931 (10th Cir. 2013) (quotation and emphasis omitted). These exceptions include returning a child to a "grave risk" of physical or psychological harm. Hague Convention art. 13(b).[2] The grave risk exception requires a "severe . . . level of risk and danger" to the child and must be proven by clear and convincing evidence. *Dobrev*, 735 F.3d at 931 (quotation omitted).

### b. Factual History

Appellant and Father, Callum Livingstone, is a 36-year-old Australian citizen. Appellee, Cross-Appellant, and Mother, Emerald Livingstone, is a 34-year-old United States citizen. The pair began cohabitating in December 2014 after a short period of dating. They wed in Las Vegas, Nevada in February 2015. From 2015 to 2017, the Livingstones primarily lived in Colorado, where Ms. Livingstone's parents reside. At the time of their separation in April 2021, the couple shared two children: a son, I.J.L., born in 2016 in Colorado; and a daughter, A.L.L., born in 2019 in Victoria, Australia.

---

[2] Other exceptions not presented in this appeal include consent from the non-removing party, settlement of the children, and preservation of human rights. *See* Hague Convention arts. 12, 13(a), 20; *see also infra* §§ II.c, III.c.

The parties moved with I.J.L. to Australia on February 12, 2017. Upon arrival, and until Ms. Livingstone's departure with the children, the family lived a semi-nomadic lifestyle. They frequently moved, often staying with friends and family, camping, or residing in short-term rentals across eastern Australia. The parties dispute the nature and quality of their lifestyle. Mr. Livingstone characterizes these years as stable and adventurous. By contrast, Ms. Livingstone describes the family's accommodations as inconsistent and sporadically unsafe. Generally, the record indicates the family struggled financially during these years.

While staying at an Airbnb in Cairns on April 22, 2021, Mr. and Ms. Livingstone quarreled. The record indicates the argument began as a dispute about money, but Ms. Livingstone asserts it was the result of months of Mr. Livingstone's irritable and irresponsible behavior towards the family.  Mr. Livingstone contests this characterization, claiming he was a supportive father and husband until Ms. Livingstone's departure. According to him, he was "completely blindsided by it all."

The day of the altercation, Ms. Livingstone made a report of domestic violence against Mr. Livingstone to local authorities. The resulting Queensland police report details verbally abusive and physically threatening behavior from Mr. Livingstone, but it does not describe any instances of physical violence between the parties or toward the children. Shortly after Ms. Livingstone made her report, officers appeared at the family's temporary residence and escorted Mr. Livingstone to the local police station for questioning. When he returned, Ms. Livingstone and the children were gone. Sometime in the following days, Mr. Livingstone traveled back to where his

family is based in Victoria expecting to find the children, but neither the children nor Ms. Livingstone were there. After leaving Cairns, Ms. Livingstone contacted the local U.S. embassy, which granted A.L.L. U.S. citizenship and a passport. Ms. Livingstone then received permission from the Australian government, despite COVID-19 travel restrictions, to leave the country on account of the family's emergency circumstances. She and the children were cleared to depart in early May and arrived in Colorado on or about May 7, 2021. They have resided in Colorado ever since.

One week after the precipitating argument, on April 29, 2021, Mr. Livingstone was issued a Temporary Protective Order (the "TPO") by the Magistrates Court in Cairns, requiring he not "approach to within 100 metres of where [Emerald and the Children] live[], work[], or frequent[], except for the purposes of having contact with children, but only as set out in writing between the parties or in compliance with an order under the Family Law Act or when contact with a child is authorised by representative of the Department of Communities." The TPO was to stay in effect "until a further order is made." On July 15, 2021, the TPO was replaced by an extended Protective Order (the "PO"), which is set to last for an additional period of five years until July 7, 2026. The language of the PO is substantively the same as the

TPO with the additional condition that Mr. Livingstone "must not locate, attempt to locate, or arrange for someone else to locate" Ms. Livingstone and the children.[3]

Mr. Livingstone was present for the issuance of the TPO and attended telephonically for the issuance of the PO. The record does not indicate Mr. Livingstone objected or otherwise resisted the imposition of either order. The record also does not show that Mr. Livingstone hired an attorney or made any attempt to contact the Department of Communities to facilitate contact with the children prior to their removal. Although he unsuccessfully attempted to reach out to Ms. Livingstone through his family prior to her departure, he did not otherwise attempt to contact Ms. Livingstone or the children. Mr. Livingstone asserts he did not learn Ms. Livingstone and the children left the country until June 18, 2021, when he received a Notice of Family Assistance Cancellation as a result of the children being outside the country for six weeks.

### c. Procedural History

Mr. Livingstone filed his complaint in Colorado federal district court requesting relief under the Hague Convention and ICARA on February 24, 2022. In accordance with Article 11 of the Hague Convention, the district court initiated an expedited hearing schedule in which the parties (a) submitted pre-hearing briefs; (b)

---

[3] As noted below, *infra* § III.a & n.5, the district court erred by relying on the post-removal PO in its second and third prong wrongful removal analysis. Accordingly, this court's analysis relies exclusively on the significant restrictions included in the TPO. As a consequence, it is not necessary to consider the potential impact posed by the additional clause included in the PO.

presented testimony and tendered exhibits at an evidentiary hearing; and (c) offered post-hearing briefs. The witnesses testifying at the evidentiary hearing included Mr. and Ms. Livingstone and their adult family members. At no point did the court hear testimony from an expert in Australian law, nor was evidence presented regarding the impact of protective orders on custody rights and their exercise under Australian law.

The district court issued its order in favor of Ms. Livingstone on August 26, 2022. It determined Mr. Livingstone failed to demonstrate the second and third prima facie elements of wrongful removal under the Hague Convention. First, the court concluded Mr. Livingstone did not show what substantial custody rights he retained in light of the restrictions included in the TPO and PO. Second, it determined Mr. Livingstone did not adequately demonstrate he was exercising his custody rights at the time of the children's removal. Although the district court found Mr. Livingstone did not actively abandon the children, it determined he did not explain how he would be able to exercise any custody right under the limitations set by the protective orders. Generally, the district court expressed frustration over the "absence of any attempt by the petitioner to address the practical implications of the protection order" and Mr. Livingstone's lack of explanation of underlying Australian family law.

Despite the district court resolving the case on the ground that Mr. Livingstone failed to meet his prima facie burden, it proceeded to analyze the affirmative defenses and exceptions available to Ms. Livingstone under the Hague Convention. These exceptions included grave risk; opposing party consent; prolonged settlement in the new country; and preservation of human rights. The district court rejected the

application of any exception. Most critically for the purposes of Ms. Livingstone's cross-appeal, the court concluded the grave risk exception was reserved for extreme harms, such as returning to a war- or famine-ridden region. These circumstances, it determined, were not present in this case.[4]

### III. Analysis

#### a. Custody Rights

As a preliminary matter, the district court erred by weighing the effect of the PO in concluding Mr. Livingstone did not possess the necessary custody rights to prevail under the Hague Convention. "The Convention is very clear that the law of the country in which the child was habitually resident governs decisions as to whether custody rights existed *at the time of removal*." *Shealy*, 295 F.3d at 1124 (emphasis added). Here, the district court concluded Mr. Livingstone did not carry his burden due to restrictions imposed in both the TPO and the PO. Whereas the TPO was issued prior to the children's removal, the PO took effect two months after Ms. Livingstone left with the children. Given that the Hague Convention measures the existence of custody rights at the time of removal, it was improper for the district court to rely on the post-removal PO in its analysis. *See id.*; *see also White v. White*, 718 F.3d 300, 308 (4th Cir. 2013) ("[T]he determination of whether removal is

---

[4] As noted below, *infra* § III.c, this court concludes Ms. Livingstone waived her argument on cross-appeal that the grave risk exception applies to these facts. In turn, we do not reach a conclusion as to whether the district court's characterization of what is necessary to establish grave risk under the Hague Convention is correct.

wrongful is based on rights of custody at the time of removal.").[5] Nonetheless, because it was in place when the removal occurred, the district court appropriately relied on the TPO when analyzing Mr. Livingstone's custody rights under Australian law.

The Hague Convention requires petitioners establish a child's removal breaches his or her custody rights under the law of the state of habitual residence. Hague Convention art. 3(a). To do so, the petitioner must establish what those rights are. *Ogawa*, 946 F.3d at 1182 ("[O]nly by understanding the nature and extent of his rights under [habitual residence state] law can we evaluate whether the content of his rights is within the Convention's definition of rights of custody."). The Australian Family Law Act of 1975 (the "AFLA") outlines that for purposes of the Hague Convention "each of the parents of a child should be regarded as having rights of custody in respect of the child unless the parent has no parental responsibility for the child because of any order of a court for the time being in force." AFLA § 111B(4)(a). Other Circuits have echoed this presumption that Australian law affords joint custody of a child absent an intervening court order. *See Sealed Appellant*, 394 F.3d at 343 (Under the AFLA, "[i]n the absence of any orders of court, each Australian parent of a child has custody rights as to the child."); *Feder v. Evans-Feder*, 63 F.3d 217, 225 (3d Cir. 1995) ("Under the [AFLA], in the absence of

---

[5] Article 3 of the Hague Convention is clear that the exercise of custody rights under the third prong is also evaluated at the time of removal. The district court's reliance on the PO, therefore, was similarly improper in its third prong analysis. *See infra* § III.b.

any orders of court, each parent is a joint guardian and a joint custodian of the child").

Here, we are presented with a TPO, which constitutes a valid court order in Australia. Although the TPO is not a parental order which expressly contemplates parental responsibility, it appears to impact Mr. Livingstone's custody rights. *See* Hague Convention art. 5(a) ("'rights of custody' shall include rights relating to the care of the person of the child"); *see also Evans-Feder*, 63 F.3d at 225 (Under the AFLA, "custody rights involve essentially the right to have and make decisions concerning daily care and control of the child."). Under the terms of the order, Mr. Livingstone is not allowed to have contact with his children absent an additional court order arising under the AFLA or through special authorization from the Department of Communities. These restrictions are severe and, depending on the application of Australian law, they could substantially affect Mr. Livingstone's ability to care for his children. As a consequence, it falls squarely within his burden to establish the nature of his custody rights under Australian law and to further establish the extent to which this court order impacts those rights.

Mr. Livingstone argues the TPO does not affect his custody rights because it does not explicitly discuss custody. In support of this assertion, he urges this court to recognize the TPO allows him to contact his children pursuant to a separate court order. This clause, he argues, should be read as an affirmative preservation of his custody rights under the Hague Convention. Mr. Livingstone's arguments, however, are completely unsupported by any evidence or authority reflecting the state of

11

Australian law. Indeed, his only substantive clarification of Australian family law is that he is entitled to *de jure* custody rights. *See* AFLA § 111B(4)(a). Otherwise, Mr. Livingstone entirely fails to illustrate how similar protective orders may impact custody rights. Instead, he contends the TPO's plain language does not affect his rights and requests this court to presume his rights are preserved. His appeal, therefore, urges this court to make unfounded conclusions about the content and nature of another country's law. *See Ogawa*, 946 F.3d at 1180–81. In effect, Mr. Livingstone's argument lacks the basic articulation of his rights as required by Article 3 of the Hague Convention. *Id*. at 1180. Merely claiming "some rights . . . does not automatically mean that the content of those rights amounts to rights of custody under the Convention." *Id* at 1181.[6]

Mr. Livingstone has declined several opportunities to clarify the nature and extent of his *de jure* custody rights in the context of applied protective orders. His trial and appellate briefing includes scant reference to or interpretation of Australian law. Further, he did not put forward expert testimony to help explain Australian law

---

[6] Mr. Livingstone offers some limited authority for the additional proposition that temporary court orders cannot impact permanent custody rights. *See, e.g.*, *Rowe v. Vargason*, No. CIV. 11-1966, 2011 WL 4529341, at *5 (D. Minn. Sept. 28, 2011) (ruling a "temporary" and "specific" intervention order did not terminate custody rights for the purposes of the Hague Convention). The case law he provides, however, does not illustrate how Australian law interprets the effect of protective orders on custody rights. This inquiry is central to Mr. Livingstone's burden of proof and has not otherwise been addressed by any discussion of Australian law. *See Ischiu v. Garcia*, 274 F. Supp. 3d 339, 349 (D. Md. 2017) (ruling a temporary restraining order did not impact Hague Convention custody rights in part because a court within the country of habitual residence "explained that the [order] did *not* alter parental rights" under the state's family law).

12

as is common practice in Hague Convention cases. *See, e.g.*, *Radu v. Shon*, 62 F.4th 1165, 1173 (9th Cir. 2023) (German law) (noting Fed. R. Civ. P. 44.1 allows courts to consider several sources for determining foreign law, but "expert testimony accompanied by extracts from foreign legal materials has been and will likely continue to be the most basic mode of proving foreign law" (quotation omitted)); *Ogawa v. Kang*, No. 2:18CV335DAK, 2018 WL 2376338, at *1 (D. Utah May 24, 2018), *aff'd* 946 F.3d at 1177 (Japanese law); *Ozaltin v. Ozaltin*, 708 F.3d 355, 363 (2d Cir. 2013) (Turkish law); *Yang v. Tsui*, 499 F.3d 259, 275 (3d Cir. 2007) (Canadian law); *Danaipour v. McLarey*, 286 F.3d 1, 10 (1st Cir. 2002) (Swedish law). Given this complete lack of guidance and our reluctance to draw speculative conclusions about another country's law, this court determines Mr. Livingstone has failed to carry his burden to show he possessed custody rights as defined by the Hague Convention.

### b. Exercise of Custody Rights

To prove wrongful abduction, the Hague Convention requires a petitioner show he or she was actually exercising custody rights at the time of removal or would have been exercising those rights but for the removal. Hague Convention art. 3(b). It is well-recognized that the standard for determining such exercise under the Hague Convention is quite liberal. *See, e.g., Walker*, 701 F.3d at 1121; *supra* § II.a. Nonetheless, Mr. Livingstone has failed to carry his burden to show what custody rights he possessed. Because he did not present evidence of those rights, he could not show he exercised the rights. *See Ogawa*, 946 F.3d at 1183.

Mr. Livingstone's arguments regarding exercise of his custody rights do not cure his failure to show he possessed custody rights in light of the TPO. Similar to his arguments arising under the second prong of the prima facie test, his contentions concerning exercise lack explanation of how Australian law construes custody rights in relation to protective orders. Mr. Livingstone argues he was exercising his custody rights by taking care of his children prior to his quarrel with Ms. Livingstone. *See Friedrich*, 78 F.3d 1065 ("exercise" includes "whenever a parent with *de jure* custody rights keeps, or seeks to keep, any sort of regular contact with his or her child"). Regular caretaking is certainly an exercise of custody rights, but it does not contextualize the status of custody rights under a protective order. Further, the record indicates Mr. Livingstone did not take steps prior to the children's removal that could have clarified the legal status of his custody rights in light of the TPO. He did not object or attempt to block the issuance of the TPO, nor did he initiate any of the approved processes under the TPO to maintain contact with the children. In the absence of evidence and authority establishing his possession of custody rights under the restrictions of the TPO, Mr. Livingstone similarly fails to show he was exercising any such rights at the time of the removal.

### c. Cross-Appeal

Although Ms. Livingstone's docketing statement indicates she intended to cross-appeal the district court's order denying the application of the grave risk exception under Article 13(b) of the Hague Convention, no such argument has been presented to this court. *See also* 22 U.S.C. § 9003(e)(2)(A). Ms. Livingstone's

principal brief does not include any mention of her cross-appeal claim and fails to present any argument on the matter. *See* Fed. R. App. 28(a), 28.1(c)(2).

Generally, "a party waives those arguments that its opening brief inadequately addresses," and Ms. Livingstone's cross-appeal is no exception. *Harsco Corp. v. Renner*, 475 F.3d 1179, 1190 (10th Cir. 2007). It is insufficient to present an issue for appeal "without advancing reasoned argument as to the grounds for appeal." *United States v. Edwards*, 69 F.3d 419, 430 (10th Cir. 1995) (quotation omitted); *see also Palmer v. Philpot*, 291 F. App'x 206, 208 (10th Cir. 2008) ("Because [Appellant] has wholly failed to support any issue with argument, evidence, or citations to the record, and has failed to comply with Rule 28 of the Federal Rules of Appellate Procedure, he has waived all issues on appeal.") (unpublished disposition cited solely for its persuasive value). By not articulating her grave risk argument in her briefing, Ms. Livingstone's cross-appeal has failed to comply with Fed. R. App. P. 28 and 28.1, and therefore, her associated claims are waived.[7]

---

[7] In addition to her deficient cross-appeal, this court recognizes Ms. Livingstone's response brief largely restates the district court's order and provides very little supporting argument. Contrary to Mr. Livingstone's suggestion, however, this lack of detail in her brief does not entirely waive her case. *See* Fed. R. App. P. 31(c) (explaining an appellee may move to dismiss if the appellant does not file a brief, but not vice versa); *see also Boulware v. Baldwin*, 545 F. App'x 725, 731 (10th Cir. 2013) ("Electing not to file an appellee's brief . . . does not concede the result of the appeal.") (unpublished disposition cited solely for its persuasive value). Unlike an appellant who fails to submit adequate briefing, an appellee may choose to file no brief at all without forfeiting the case. *Id*. As always, "we may affirm on any basis supported by the record, even if it requires ruling on arguments not reached by the district court or even presented to us on appeal." *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011).

## IV. Conclusion

The judgment entered by the United States District Court for the District of Colorado is hereby **affirmed**.

Entered for the Court

Michael R. Murphy
Circuit Judge

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157
Clerk@ca10.uscourts.gov

Christopher M. Wolpert  
Clerk of Court

Jane K. Castro  
Chief Deputy Clerk

December 08, 2023

Nathan Archibald  
Quinn Emanuel Urquhart & Sullivan  
2755 East Cottonwood Parkway, Suite 430  
Salt Lake City, UT 84121

Timothy M. Bagshaw  
Craig D. Galli  
April M. Medley  
Holland & Hart  
222 South Main Street, Suite 2200  
Salt Lake City, UT 84101

Russel Murray  
Office of Russel Murray  
8310 South Valley Highway, Suite 300  
Englewood, CO 80112

RE:   22-1308, 22-1343, Livingstone v. Livingstone  
      Dist/Ag docket: 1:22-CV-00472-RM

Dear Counsel:

Enclosed is a copy of the order and judgment issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40(a)(1), any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 3900 words or 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R.35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Christopher M. Wolpert
Clerk of Court

CMW/jjh